503 A.2d 944

Daniel JACKSON, Shirley Jones and Frances McElroy Shannon,

v.

Harry SPAGNOLA, Martinique Restaurant and Cocktail Lounge, Volkswagen of America, Inc. and Volkswagen A–G, Appellees.

Appeal of Frances McElroy SHANNON.

Superior Court of Pennsylvania.

Argued May 22, 1985.

Filed Jan. 24, 1986.

472

Oscar S. Schermer, Philadelphia, for appellant.

David Richman, Philadelphia, for Volkswagen, appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CAVANAUGH, Judge:

Frances McElroy Shannon was injured in a multi-vehicle collision on October 15, 1974. She subsequently filed suit against Harry Spagnola, the operator of the other vehicle; the Martinique Restaurant and Cocktail Lounge, which had served alcoholic beverages to defendant Spagnola; and Volkswagen of America, Inc. and Volkswagen A–G, distributor and manufacturer of the 1973 Volkswagen Beetle in which Ms. Shannon was a passenger. In December, 1982, a jury returned a verdict against Spagnola only in the amount of $350,000.00 for the appellant. Post-trial motions were filed and subsequently denied by the lower court. Ms. Shannon now appeals from the judgment in favor of Volkswagen of America, Inc. and Volkswagen A–G.

Appellant presents five questions for review:

(1) whether the trial court erred in allowing Volkswagen's expert witness to exhibit test crash films at trial; and whether such demonstrative evidence was unfairly prejudicial to appellant; (2) whether the trial court erred in refusing to strike the expert's testimony; (3) whether the trial court erred in admitting evidence of the Federal Motor Vehicle Safety Standards; (4) whether the trial court erred in refusing appellant's proposed charge to the jury on appellees' compliance or non-compliance with the Federal

Safety Standards; and (5) whether the verdict in favor of Volkswagen is against the weight of the evidence.

The record as originally forwarded to this court did not contain the appellant's supplemental post-trial motions which raised the first four issues presented above. Accordingly, we filed an opinion on September 27, 1985 which was withdrawn by order of October 16, 1985 in which we held that the first four issues were waived as not having been raised in the court below in post-trial motions. Subsequent to our opinion of September 27, 1985, we learned that in fact supplemental post-trial motions were filed below under local Philadelphia Rule 240 which provides:

(C) *Filing Procedure*

(1) All exceptions and post-trial motions shall be filed in triplicate with the Post-Trial Motion Clerk and shall contain the name of the trial judge as well as the names, addresses and telephone numbers of all counsel involved in the trial of the case. In addition, said motions and exceptions shall contain a Certification of Service on all counsel named therein, and, if desired, should be accompanied by a written request for argument of the exceptions or motions before a court en banc. Any request by opposing counsel for argument before a court en banc shall be filed in writing within five (5) days of the service of the exceptions or motions.

*(2) Under the direction of the Court Administrator, the Post-Trial Motion Clerk shall maintain an Individual Court Docket for each Judge of the Common Pleas Court.*

*The Post-Trial Motion Clerk shall docket exceptions and post-trial motions in* the Individual Docket of the Trial Judge and in *the General Appearance Docket and forward copies of same to the Trial Judge* and to the court stenographer who was assigned to the trial of the case. The Trial Judge shall, upon receipt of the exceptions or motions, indicate to the Post-Trial Motion Clerk whether or not he desires the exceptions or motions to be heard by a court en banc by entering an order indicating

such. The Post-Trial Motion Clerk will promptly forward a copy of the order to all interested counsel.

.    .    .    .    .

(Emphasis added.)

In the instant case supplemental post-trial motions were not docketed on the general appearance docket below as required by local Rule 240 and were not forwarded to this court until after the case was originally decided by us. Philadelphia Local Rule 240 is not in conflict with the Pa.R.A.P. 1921 which provides:

### Rule 1921. Composition of Record on Appeal

The original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases.

Nevertheless, the administration of Local Rule 240 has led to the situation we had in this case where the supplemental post-trial motions did not appear on the docket entries forwarded to the court and in fact the supplemental motions themselves were not timely forwarded to this court. We have no way of telling whether they were entered on the individual docket of the trial judge as required by Rule 240 as this docket was not a part of the record sent to us. We recognize that the dual docketing system may have been devised to fit the needs of the trial court, but must insist that it be conducted in a manner which will insure that *all* of the original papers, exhibits, docket entries and transcripts be transmitted to this court on appeal.

Turning to the appellant's argument on the merits, we find that the testimony of Volkswagen's expert witness, Dr. Warner, and his exhibition of test crash films at the trial was not prejudicial to the appellant. The appellant contended at trial that the injuries resulting from a very serious automobile accident were due to faulty design by Volkswagen of the seats in the Volkswagen automobile in which Frances McElroy Shannon was a passenger. The

films introduced by Volkswagen illustrated the testimony given by Dr. Warner that the design of the car manufactured by Volkswagen was safe. Dr. Warner described the effect of a rear end collision such as was involved in this case, on the car seats designed by Volkswagen. The film used was that of federally conducted crash tests of automobiles of makes different than those involved in the instant case, and this was pointed out to the jury. The film was offered to show the operation of automobile seats in general, and in no way indicated the construction of the car seat involved in this accident. Demonstrative evidence is admissible if its probative value outweighs the likelihood of improperly influencing the minds of the jury. 1 *Henry on Pennsylvania Evidence*, § 421, 1978 Pocket Parts. The use of the films in this case was similar to that in *Zurzola v. General Motors Corp.*, 69 F.R.D. 469 (E.D.Pa.1975) in which a film was used to explain certain principles of physics. The plaintiff contended in that case that the film did not accurately represent the accident in the case and was not listed as an exhibit by the defendant prior to trial, and was highly prejudicial to the plaintiff because it failed to show all of the physical factors operative in the instant collision. The court held that the film was admissible as no prejudice resulted to the plaintiff in the jury seeing the film and there was ample opportunity to cross examine the defendant's expert.

In *Robinson v. Audi NSU Auto Union*, 739 F.2d 1481 (10 Cir.1984) the court affirmed the use of a film in a products liability case which depicted a series of rear end collisions between various makes of 1973 automobiles. The court held that the admission of the film was within the discretion of the trial judge. It was further stated by the court at 739 F.2d 1485:

Accordingly, this matter should not be the basis for reversal. The film illustrated some relevant principles. It did not purport to recreate the accident at issue, including certain particulars of plaintiffs' accident.

We hold that the showing of the films did not unduly prejudice the appellants. As noted in *House of Pasta, Inc. v. Mayo,* 303 Pa.Super. 298, 313 n. 6, 449 A.2d 697, 704 n. 6 (1982): " 'Prejudice' does not mean 'detrimental to a party's case' but rather 'an undue tendency to suggest decision on an improper basis.' " In this case, the limited use of the film did not suggest a decision to the jury which would be made on an unjustified basis.

The appellant had proper notice that Volkswagen intended to use the film. On December 15, 1982 counsel for Volkswagen advised appellant's counsel by a hand delivered letter that it intended to use the film. Counsel for the appellants closed his case on December 16, 1982 and the film was shown on December 17, 1982. The December 15th letter advised counsel for the appellants that the films would be available for them to review if they so desired.[1]

■ The appellant's next contention is that the testimony of Dr. Charles W. Warner and Vern L. Roberts, Volkswagen's expert witnesses, was inadmissible. The admission of expert testimony is within the sound discretion of the trial court whose decision will not be reversed in the absence of an abuse of discretion. *Klyman v. Southeastern Pennsylvania Transportation Authority,* 331 Pa.Super. 172, 480 A.2d 299 (1984). The weight to be accorded to the testimony of an expert is to be determined by the jury. *Reardon v. Meehan,* 424 Pa. 460, 227 A.2d 667 (1967). In this case, Dr. Warner had conducted an extensive investigation into the collision involved in this case in which a Cadillac travelling at a high rate of speed and operated by

---

1. With respect to the use of the films, the court below stated in its opinion:
   This court ruled that the test crash films were illustrative evidence of Dr. Warner's testimony regarding the general operation of seats, that there was little prejudice or surprise in fact since plaintiff's experts had testified on the subject, that plaintiff had twenty four hours to cure any prejudice which may have existed and that based upon the pre-trial discussions of counsel as related by defense counsel, Mr. Madeira, there was no bad faith or willful concealment of evidence. The test crash films were therefore admitted into evidence and used at trial.

an intoxicated driver rear ended a Volkswagen sedan, known as a "Beetle", which was stopped for a red light. As a result, the Volkswagen crashed into the car in front of it, a Chevrolet Monte Carlo, and the second impact caused the Monte Carlo to strike another vehicle. One of the plaintiffs below, Frances McElroy Shannon, who was a passenger in the Volkswagen, claimed that her injuries were aggravated because of the failure of a bolt on the back seat of the Volkswagen. Dr. Warner testified concerning the design and function of the Volkswagen and the design of the Volkswagen seats including a "deformation element" which is designed to yield on severe rear-end impact. There was contradictory testimony between the appellant's and the appellees' experts and the function of the jury was to resolve the conflict. Mr. Roberts testified that in his opinion the seat in the Volkswagen had not failed and that Ms. Shannon's injuries were not consistent with the back seat totally collapsing into a horizontal position. The testimony of both witnesses for the appellee had a sufficient factual basis.

The appellant states that "the issue before the jury was whether the seat performed as society would expect and as designed." The proper design of a car seat and its expected performance in a situation involving the crushing impact of a 5000 pound vehicle travelling at a high rate of speed upon a stationery vehicle weighing half as much, is a very complex technological question. Both sides presented their own expert witnesses and the jury determined the credibility to be given to the testimony. Expert testimony is admissible when it involves explanations and inferences not within ordinary training, knowledge, intelligence and experience of the jury. *Kubit v. Russ,* 287 Pa.Super. 28, 429 A.2d 703 (1981).

The appellant next contends that the trial court erred in admitting evidence of Federal Motor Vehicle Safety Standards, (FMVSS), in a strict liability case under § 402 A of the Restatement (Second) of Torts. This issue is controlled by *Brogley v. Chambersburg Engineering Company,* 306

Pa.Super. 316, 452 A.2d 743 (1982) which was a products liability case, where this court held that federal regulations intended to enhance safety are admissible. In *Sours v. General Motors Corp.*, 717 F.2d 1511 (6th Cir.1983) the Court of Appeals held that FMVSS are admissible in strict liability cases under § 402 A of the Restatement (Second) of Torts. The court pointed out that compliance with FMVSS does not immunize a manufacturer from liability and "compliance is only a guide and not conclusive." 717 F.2d at 1517. The court further stated at 1517:

> We hold that GM's alleged compliance with FMVSS 216, along with its other evidence of adherence to industry customs and standards, was properly left for the jurors to factor into the calculus that comprises reasonable design in a case of strict products liability.

The introduction of FMVSS into evidence was proper, although compliance by Volkswagen with the standards is "only a piece of the evidentiary puzzle" and does not grant immunity from strict liability. *Shipp v. General Motors Corp.*, 750 F.2d 418, 421 (5th Cir.1985). See also *Stonehocker v. General Motors Corp.*, 587 F.2d 151 (4th Cir. 1978). While compliance with FMVSS is not conclusive as to the absence of liability under a theory of strict liability, compliance is of probative value in determining whether there was a defect. In *Bascelli v. Randy, Inc.*, 339 Pa.Super. 254, 488 A.2d 1110 (1985) a strict liability case under Restatement (Second) of Torts, § 402 A, we held that although contributory negligence is not a defense in such a case, evidence of contributory negligence was relevant in showing causation. In the instant case, the jury could consider compliance by Volkswagen with FMVSS in determining whether a defect existed.

The appellant also contends that the court below erred in refusing the following point for charge:

> "21. Compliance or non-compliance with the Federal Safety Standards should not be considered by you as evidence of due care or lack of due care. Because plaintiff bases her action on strict liability, such standards

should not be considered by you in determining whether the said 1973 Volkswagen was defective."

The requested instruction was properly denied as the introduction of the element of due care or lack thereof is not an issue in a strict liability case and can only confuse the jury. The appellants state at page 55 of their brief: "Since evidence of these minimum standards was admitted, the appellant-plaintiff, Shannon, submits that she was prejudiced by the trial judge's refusal to instruct the jury that the standards were not to be considered as evidence of due care, inasmuch as due care is an element not to be considered in a strict products liability case." The appellant properly notes that due care on the part of the manufacturer was not a part of the case since the cause of action was based on strict liability under 402 A. *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975); *Lobianco v. Property Protection, Inc.*, 292 Pa.Super. 346, 437 A.2d 417 (1981). A requested instruction that the federal standards should not be considered as evidence of something not involved in the case, would have to mislead the jury. Further, the court gave a proper instruction on strict liability as follows:

Liability is sought against Volkswagen on the theory that they are the sellers and manufacturers of a defective product. The law provides that the seller or manufacturer of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for use and without any condition that makes it unsafe.

If you find that the product at the time it left the defendant Volkswagen's control lacked any element necessary to make it safe for use, or contained any condition that made it unsafe for use, then the product was defective and the defendant is liable for all harm caused by such defect.

See *Azzarello v. Black Brothers Company*, 480 Pa. 547, 391 A.2d 1020 (1978); *McKay v. Sandmold Systems, Inc.*, 333 Pa.Super. 235, 482 A.2d 260 (1984). The trial judge has

wide latitude in charging the jury as long as he fully conveys to the jury the law of the case. *Burch v. Sears, Roebuck & Company*, 320 Pa.Super. 444, 467 A.2d 615 (1983).

■ The fifth issue presented is that the verdict in favor of Volkswagen is against the weight of the evidence. This allegation was set forth as follows in the appellant's post trial motions: "The verdict was against the weight of the evidence." This is insufficient to preserve this issue.

The Supreme Court has already said that this is true for criminal cases. "Boiler-plate" motions, such as "the verdict was against the law" or "against the evidence," are not sufficient because "counsel's precise statement of issues and grounds relied upon in written form [is necessary to] insure[ ] that both the trial court and the Commonwealth will have adequate notice of the legal theories being advanced." *Commonwealth v. Waters*, 477 Pa. 430, 434, 384 A.2d 234, 236 (1978). *See also Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

■ We believe that *Tagnani* [v. Lew, 493 Pa. 371, 426 A.2d 595 (1981) ] requires that the same disapproval of "boiler-plate" motions be extended to civil cases. To permit the trial court to grant a new trial on the basis of a very general assignment of error, such as "the verdict is against the law" or "against the evidence," would result in losing the advantages of requiring specific assignments of error. Furthermore, to permit the trial court to make its own selection of reasons for granting a new trial, and then allocate those reasons under the rubric that the verdict was "against the law" or "against the evidence," would permit the court to grant a new trial for a reason that counsel would have been prevented from raising in the motion for new trial because at the time the alleged error occurred, no objection was made. Such a result would clearly be contrary to the mandate of *Tagnani*.

*Carnicelli v. Bartram*, 289 Pa.Super. 424, 430, 433 A.2d 878, 881 (1981). *See also Cherry v. Willer*, 317 Pa.Super.

58, 463 A.2d 1082 (1983) (court may not consider issues raised only in briefs in support of boilerplate post-verdict motions). Appellant's allegation that the verdict is against the weight of the evidence therefore is waived. Notwithstanding waiver, we have examined the evidence in light of the test for determining whether the verdict is against the weight of the evidence, and find that it is not. *See Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984).

Order affirmed.