## Williams v. Pennlake Realty Assoc.

C.P. of Bucks County, no. 96-02931-05.

*Bernard Edelson,* for plaintiff.
*Claudia D. McCarron,* for defendants Pennlake Realty Associates.

LAWLER, *J.,* August 9, 1999—Defendants, Pennlake Realty Associates, appeal the order of this court dated June 22, 1999, denying their motions for post-trial relief. Pursuant to Pa.R.A.P. 1925(b), defendants have submitted a concise statement of matters complained of on appeal. This opinion is filed in accordance with Pa.R.A.P. 1925(a).

## BACKGROUND

Defendants own and manage the Lakeview Terrace Apartments, the apartment complex in which plaintiff Lisa Williams has been a tenant for approximately seven years. This apartment complex is the location where plaintiff had a slip and fall accident in June of 1994 and where plaintiff continues to reside.

In the spring of 1994, the square tiles on the floor of the bathroom in plaintiff's apartment began "coming out." N.T., 3/8/99, pp. 14-15. As a result, the portion of the bathroom which meets the hallway carpet had no tiles, while the remaining portion of the bathroom had the square tiles. N.T., 3/8/99, p. 41.

When this problem began, plaintiff telephoned the apartment complex office in April of 1994, reported that the bathroom tiles were missing, and asked for maintenance to come and replace them. N.T., 3/8/99, pp. 16-17. Plaintiff called the office a few times but, despite assurances that maintenance would be sent, no repairs were made to correct the problem before the accident occurred. N.T., 3/9/99, pp. 89-90. The only action taken was the preparation of a work order on April 14, 1994, which was subsequently submitted to the maintenance department. N.T., 3/8/99, p. 57; N.T., 3/9/99, pp. 35-36. Nothing further was done, as defendants' resident manager incorrectly assumed that the problem had been addressed. N.T., 3/9/99, pp. 35-36.

On June 5, plaintiff got up in the middle of the night to go to the bathroom. As she was leaving the bathroom, plaintiff stubbed her right toe into the space between the start of the hallway carpet and the cement gap where the tiles were missing. N.T., 3/8/99, p. 17. This caused plaintiff to fall and hit her left kneecap on the concrete of the

bathroom floor. N.T., 3/8/99, p. 17. Plaintiff required surgery to correct some of the injuries sustained to her left knee. Additionally, plaintiff has developed degenerative arthritis in the knee.

Following the accident, an inspection of plaintiff's premises was conducted by HUD. N.T., 3/9/99, pp. 31-32. Based on the inspection report, a work order was prepared by the resident manager directing that the tile problem be addressed as the "bathroom floor [is] coming apart." N.T., 3/9/99, pp. 29-30. Defendants subsequently replaced the tiles in plaintiff's bathroom. N.T., 3/8/99, p. 31.

Thereafter, plaintiff brought suit against defendants for the injuries she sustained as a result of her fall. The case went to trial on March 8, 1999. On March 10, 1999, the jury returned a verdict in favor of plaintiff in the amount of $207,275.

## ISSUES ON APPEAL

Defendants appeal the jury verdict rendered in favor of plaintiff. Defendants' appeal, in essence, raises four issues. First, defendants argue that this court erred in refusing to enter judgment n.o.v. as defendants had no duty to make repairs. Second, defendants contend that the court's jury charge was prejudicial to defendants because it misled the jury as to the applicable law. Third, defendants allege that this court committed evidentiary errors. Fourth, defendants claim that this court erred in failing to order a remittitur to which the defendants were entitled because the verdict is excessive. For the reasons enumerated below, it is clear that none of these alleged errors holds any merit.

## DISCUSSION

### 1. Defendants Were Not Entitled to a Judgment N.O.V. As They Had a Duty To Repair the Floor in Plaintiff's Bathroom

Defendants claim they are entitled to a judgment n.o.v. based on the proposition that, absent a provision in a lease to repair, an agreement by the landlord to repair made after the tenant takes possession does not impose a tort duty to repair upon the landlord. However, defendants had a duty to repair the plaintiff's bathroom under the factual circumstances of the case.

At the outset, it is important to note that a judgment n.o.v. is properly entered by the court only where the facts are so clear that no two reasonable minds could fail to agree that the verdict was improper. *Lilley v. Johns-Manville Corp.*, 408 Pa. Super. 83, 91, 596 A.2d 203, 207 (1991), *allocatur denied,* 530 Pa. 644, 607 A.2d 254 (1992). In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *McDermott v. Biddle,* 436 Pa. Super. 94, 105, 647 A.2d 514, 519 (1994), quoting *Broxie v. Household Finance Company,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). With the evidence considered in the light most favorable to plaintiff in the instant case, it is clear that defendants are not entitled to a judgment n.o.v.

Generally, in the absence of a lease provision, a landlord is under no duty to repair the leased premises. *Felton by Felton v. Spratley,* 433 Pa. Super. 474, 479, 640 A.2d 1358, 1361 (1994). However, a landlord can be held li-

able for failing to make repairs under other factual circumstances and legal theories. One such circumstance is when there is a course of conduct under which a landlord undertakes to maintain and repair the tenant's apartment.

A landlord's duty to repair can arise from his or her course of conduct in performing repairs even without an express promise or provision in the lease. *McDevitt v. Terminal Warehouse Co.,* 304 Pa. Super. 438, 452, 450 A.2d 991, 998 (1982); Restatement (Second) of Torts §357. The case of *McDevitt v. Terminal Warehouse Co.* is representative of the current state of the law regarding a landlord's duty to repair that arises from course of conduct. In *McDevitt,* the Superior Court found that the landlord had a duty to maintain a parking lot leased to tenant despite the absence of a clause in the lease. In so holding, the Superior Court relied on evidence in the record establishing that the landlord performed needed maintenance for years for the benefit of the tenant and tenant's employees upon notification by tenant of problems that developed. 304 Pa. Super. at 451-52, 450 A.2d at 998. This course of conduct gave rise to the implication that the landlord undertook a duty to repair and maintain the premises. *Id.*

Likewise, in the instant case, although the lease was silent as to who had the duty to repair, defendants actually performed the maintenance and repairs of the premises. Defendants, like the landlord in *McDevitt,* established a procedure to handle and carry out requests for repairs made by tenants. See N.T., 3/9/99, pp. 16, 25-26. By virtue of this course of conduct, there arose an implication that defendants undertook a duty to repair and maintain the premises.

Further support for the course of conduct theory of liability is found in section 357 of the Restatement (Second) of Torts. That section was adopted by Pennsylvania in *Reitmeyer v. Sprecher,* 431 Pa. 284, 243 A.2d 395 (1968). Section 357 provides as follows:

"Section 357. Where lessor contracts to repair.

"A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after lessee has taken possession if

"*(a)* the lessor, as such, has contracted by a covenant in the lease *or otherwise* to keep the land in repair, and

"(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

"(c) the lessor fails to exercise reasonable care to perform his contract." (emphasis added)

Section 357 is grounded upon the theory that the special relationship between a landlord and a tenant will likely induce the tenant into relying on the landlord to make repairs and will thus cause the tenant to forego any efforts to remedy the dangerous condition himself. *Kelly by Kelly v. Ickes,* 427 Pa. Super. 542, 552, 629 A.2d 1002, 1007 (1993), citing *Reitmeyer,* 431 Pa. at 288-89, 243 A.2d at 397.

Section 357 is not limited to situations where the lease provides that the landlord is to make repairs. *Kelly,* 427 Pa. Super. at 552, 629 A.2d at 1007. To the contrary, "section 357 indicates that a lessor may undertake the duty as a covenant in the lease or 'otherwise.' " *Id.*

In the instant case, defendants did not agree in the lease to make repairs. However, defendants "otherwise" agreed

to make repairs by creating a procedure for repairing tenants' apartments and having their maintenance department perform those repairs upon notification of the dangerous conditions on the premises. As a consequence, this course of conduct establishes that defendants had the duty to repair.

A second theory under which defendants can be held to have possessed a duty to plaintiff is under section 323 of the Restatement (Second) of Torts. The Supreme Court of Pennsylvania adopted section 323 because it is "an accurate statement of the law in this Commonwealth." *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980); *DeJesus v. Liberty Mutual Insurance Co.,* 423 Pa. 198, 223 A.2d 849 (1966). Section 323 provides as follows:

"Section 323. Negligent performance or undertaking to render services

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of harm, *or*

"(b) the harm is suffered because of the other's reliance upon the undertaking." (emphasis added)

Under section 323, landlords assume a duty of care to their tenants by consistently promising to remedy a dangerous condition on the premises, thereby creating a possible reliance by their tenants on their efforts. Thus, by agreeing to make the repairs, landlords assume the duty to actually make the repairs. *Reider v. Martin,* 359 Pa. Super. 586, 592-93, 519 A.2d 507, 511 (1987), *allocatur denied,* 517 Pa. 594, 535 A.2d 83 (1987).

In the instant case, defendants assumed the duty to repair plaintiff's bathroom floor when they agreed to address the dangerous condition. Plaintiff made at least two or three calls to the resident manager and asked for the bathroom tiles to be repaired. N.T., 3/9/99, pp. 89-90. In response to the initial call, defendants promised to repair the floor. N.T., 3/9/99, p. 90. Plaintiff relied on that promise and did nothing to fix the floor herself. When the needed repairs were not made, plaintiff again called defendants. Another promise was made to plaintiff. Plaintiff again relied upon that promise and waited for defendants to fix the floor. By virtue of defendants' promises and plaintiff's reliance on those promises, defendants assumed the duty under section 323 to actually make the repairs.

### 2. *This Court Acted Properly in Rendering Its Instructions to the Jury*

The standard and scope of review of a court's instructions to the jury is as follows:

"When a challenge is made as to the sufficiency of a charge to the jury, [the court's] function . . . is to examine the charge in its entirety against the background of the evidence to determine whether error has been made which prejudices the complaining party. Unless we conclude that the charge as a whole was erroneous and may have prejudiced the [complaining party], we will not reverse for isolated inaccuracies. In making such a determination, we are careful to construe the offending portions in their proper context." *Nobel C. Quandel Co. v. Slough Flooring Inc.,* 384 Pa. Super. 236, 240, 558 A.2d 99, 101 (1989).

All of the challenges raised by defendants to this court's instructions to the jury lack legal support.

One challenge raised by defendants is to this court's charge to the jury regarding the duty of a landlord who covenants to make repairs. Defendants claim there was no evidence of such a covenant. Defendants are mistaken, as this court's instructions were factually and legally correct.

The jury was instructed in accordance with section 357 of the Restatement (Second) of Torts. N.T., 3/10/99, pp. 16-17. This court also charged the jury that a duty to repair arises from the landlord's course of conduct over time in undertaking to make repairs. N.T., 3/10/99, p. 16. For the reasons set forth on pages 278-284, *supra,* it is clear that the jury was correctly instructed on the duty of a landlord to make repairs.

A second challenge raised by defendants focuses on this court's charge as to the duty of care owed by a possessor of land to his invitees. This court's instructions were based upon Pa.S.S.J.I. (Civil) §§7.00 and 7.00B. N.T., 3/10/99, pp. 15-16.

Defendants have not proven that they suffered any legal prejudice from this court's instructions regarding invitees. The entire charge must be considered in determining whether a prejudicial error occurred. *James v. Ferguson,* 401 Pa. 92, 97, 162 A.2d 690, 693 (1960). Further, to constitute a reversible error, it must be shown that a jury instruction was both erroneous and harmful to appellant. *Jistarri v. Nappi,* 378 Pa. Super. 583, 588, 549 A.2d 210, 213 (1988). Defendants have not shown any harm. Instead, any "isolated inaccuracies" in the court's charge were not prejudicial when put in the proper

context and the charge as a whole is examined. *Nobel C. Quandel Co.*, 384 Pa. at 240, 558 A.2d at 101.

Additionally, defendants themselves requested that this court give the jury instructions regarding invitees. Most of defendants' requested points for charge concerning liability are based on or are taken from cases and sections of the Restatement dealing with the duty of care owed to invitees by possessors of land. It is incredible that defendants request this court to instruct the jury on the principles of law concerning invitees, and then object and ask for a new trial when the court does as the defendants requested.

Lastly, defendants claim that this court erred in not giving nos. 5, 6, 7, 8, 14, 15 and 20 of defendants' proposed points for charge. However, a defendant who submits points for binding instruction, which are denied by the trial court, waives any alleged error where the defendant did not object at the end of the charge to the court's failure to give the instructions. *Gray v. H.C. Duke & Sons Inc.*, 387 Pa. Super. 95, 109, 563 A.2d 1201, 1208 (1989), *allocatur denied*, 525 Pa. 583, 575 A.2d 114 (1990). Defendants did not take exception to this court's failure to give the proposed points at the conclusion of the charge to the jury. Consequently, defendants' claim is waived.

Moreover, as noted above, none of these requested points for charge are based on landlord-tenant cases. Instead, they are based on cases and sections of the Restatement that concern the liability of a possessor of land to his invitees. Defendants seek a new trial on the ground that this court improperly instructed the jury on the law of invitees. Defendants cannot also complain that a refusal to instruct the jury on the law of invitees constitutes error.

This court's charge to the jury accurately stated the law governing the instant action. It properly covered defendants' points which were applicable to the case using its own language. See *Lilley,* 408 Pa. Super. at 95, 596 A.2d at 209 ("So long as the trial judge chooses a form of expression which adequately and clearly covers the subject, he or she is not required to use the exact language of a requested point.").

### 3. *No Evidentiary Errors Were Committed at Trial*

Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court. *Lewis v. Pruitt,* 337 Pa. Super. 419, 428, 487 A.2d 16, 20 (1985). An evidentiary ruling may be reversed only if the complaining party establishes that it was error to admit the challenged evidence and that prejudice occurred. *R.P. Clarke Personnel Inc. v. Commonwealth National Bank,* 384 Pa. Super. 524, 535, 559 A.2d 560, 565 (1989). "'Prejudice' does not mean 'detrimental to a party's case,' but rather 'an undue tendency to suggest decision on an improper basis.'" *Jackson v. Spagnola,* 349 Pa. Super. 471, 477, 503 A.2d 944, 947 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1987). Consequently, a new trial is warranted only when the improperly admitted evidence affected the jury's verdict. *Warren v. Mosites Construction Co.,* 253 Pa. Super. 395, 404, 385 A.2d 397, 401 (1978). With these principles in mind, it is clear that a new trial is not warranted in the instant case on the basis of any alleged evidentiary errors.

One evidentiary error alleged by defendants concerns the testimony of defendants' expert witness, Serge Borichevsky. Defendants claim that this court erred in permitting plaintiff to cross-examine Mr. Borichevsky

about a Bucks County Housing Authority inspection report dated June 9, 1994. See exhibit D-6. On direct examination, Mr. Borichevsky testified that he reviewed the inspection report in connection with analysis of plaintiff's June 5, 1994 accident. N.T., 3/9/99, pp. 52-53. On cross-examination, he testified that he used the inspection report in drafting his own report. N.T., 3/9/99, pp. 64-66.

Mr. Borichevsky testified that the inspection report reflects an inspection by Bucks County that gave defendants a failing grade. Deficiencies listed in the inspection report included the collapsing of the front steps, a leak in the hallway ceiling and peeling paint. The inspection report also called for the repair of these problems. N.T., 3/9/99, pp. 79-80.

Essentially the same evidence contained in the inspection report was introduced without objection during plaintiff's cross-examination of defendants' resident manager. N.T., 3/9/99, pp. 29-30. Mr. Borichevsky testified that he had heard defendants' resident manager quote from the inspection report in her testimony. N.T., 3/9/99, p. 66.

The cross-examination of Mr. Borichevsky was proper. Rule 705 of the Pennsylvania Rules of Evidence states that an expert must testify as to the facts or data on which his or her opinion is based. Rule 705 does not change the common law. See e.g., Kozak v. Struth, 515 Pa. 554, 560, 531 A.2d 420, 423 (1987) (requiring the disclosure of facts used by an expert in forming an opinion). This court correctly ruled that, because defendants' resident manager mentioned the inspection report and because Mr. Borichevsky relied on the inspection report in forming his opinion, Mr. Borichevsky could be cross-examined about it. N.T., 3/9/99, pp. 73-74.

Even if the cross-examination was not proper, defendants were not prejudiced by it. Essentially the same evidence was introduced, without objection, during plaintiff's cross-examination of defendants' resident manager. N.T., 3/9/99, pp. 29-30. Further, defendants have not otherwise proven that any prejudice was suffered due to Mr. Borichevsky's testimony.

A second evidentiary error alleged by defendants concerns the exclusion of evidence. Defendants claim that this court erred in granting plaintiff's motion in limine, and preventing Dr. Victor Frankel to testify regarding instances in which plaintiff experienced dizziness and difficulty balancing. N.T., 3/9/99, p. 13. The testimony at issue is as follows:

"Q. All right. Doctor, I want to redirect your attention to your review of the plaintiff's medical records. Was there anything in the plaintiff's medical history in June of 1994 which impacted or was relevant to her ability to ambulate?

"A. Well, as I stated, part of the medical records that were available to me were the records of the Bristol Family Medical Center. There were—there were—there were references in the notations there to trouble balancing in the past. . . .

"A. Yes. As I stated, in the Bristol Family Medical Center records, there was reference in September of '93 and March of '94 of severe dizziness and trouble balancing." Deposition of Dr. Victor Frankel, pp. 18-19; N.T., 3/9/99, p. 8.

Case law makes clear that defendants' proposed evidence was properly excluded:

"It is well established that it cannot be proven that a person committed an act by showing that that person

committed a similar act in the past. *Levant v. Wasserman,* 445 Pa. 380, 382-83, 284 A.2d 794, 796 (1971). There must be some connection or relation between the prior and present acts. *Id.* In a personal injury case, that relation is often similar injuries. See *Papa v. Pittsburgh Penn-Center Corp.,* 421 Pa. 228, 218 A.2d 783 (1966) ("Testimony concerning any prior fall [is] not admissible for any purpose unless the injuries from that alleged accident [can] be connected to those claimed in the present suit, so as to raise the inference of a pre-existing condition.')." *Valentine v. Acme Markets Inc.,* 455 Pa. Super. 256, 261, 687 A.2d 1157, 1160 (1997).

*Valentine* held that the trial court erred when it allowed the defendant to present evidence of two prior falls by a plaintiff in an action arising from a slip and fall in the defendant's supermarket. The Superior Court rejected the trial court's claim that evidence of plaintiff's two prior falls was relevant. In so doing, the Superior Court concluded:

"The only purpose of this evidence [of the two prior falls] . . . was to allow the jury to infer that because [plaintiff] had fallen for no specific reason in the past, he probably just fell on his own this time too. This conclusion, however, is impermissible. Therefore, we find that the trial court abused its discretion in admitting evidence of [plaintiff's] two prior falls." 455 Pa. Super. at 262, 687 A.2d at 1160.

In the instant case, Dr. Frankel failed to connect the episodes of dizziness and balance problems to the June 5, 1994 accident. Without evidence connecting the past incidents to the accident introduction of those incidents would only serve to improperly create an inference that plaintiff fell due to dizziness and balancing problems.

Consequently, this court barred the introduction of Dr. Frankel's testimony on the subject.

### 4. *Defendants' Motion for a Remittitur Was Properly Denied*

The decision to order remittitur is committed to the discretion of the trial court and will not be reversed absent an abuse of discretion. *Taylor v. Celotex Corp.,* 393 Pa. Super. 566, 595, 574 A.2d 1084, 1099 (1990). Remittitur is proper when it is apparent that the jury returned a verdict "excessive in amount and clearly beyond what the evidence warrants. . . ." *Id.* at 594, 574 A.2d at 1098, quoting *Daley v. John Wanamaker Inc.,* 317 Pa. Super. 348, 352, 464 A.2d 355, 357-58 (1983). However, the large size of a verdict is in itself not evidence or proof of excessiveness. *Mecca v. Lukasik,* 366 Pa. Super. 149, 162, 530 A.2d 1334, 1340 (1987).

The standard to be used in determining whether remittitur should be granted is whether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Doe v. Raezer,* 444 Pa. Super. 334, 340, 664 A.2d 102, 105 (1995), *allocatur denied,* 544 Pa. 630, 675 A.2d 1248 (1996). Consequently, "[t]he trial court may grant a request for a remittitur only when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption." *Id.*

The factors to be considered in determining whether a verdict is excess include (1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely subjective testimony

. . ., (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with employment, (5) the size of the plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint. *Id.* at 341-42, 664 A.2d at 105-106.

In light of these principles, it is clear that the jury's verdict was not excessive in the instant case. Plaintiff testified that immediately after she stubbed her toe and fell, her knee became very swollen. N.T., 3/8/99, p. 18. Plaintiff stated that the pain felt as though she had broken her kneecap. N.T., 3/8/99, p. 19.

Plaintiff underwent physical therapy for seven or eight months, with no significant improvement. N.T., 3/8/99, pp. 19-20. During that time, she experienced pain, discomfort, stiffness and swelling. N.T., 3/8/99, p. 21.

Plaintiff had surgery in August of 1995. After the surgery, plaintiff woke up in a tremendous amount of pain and vomited for hours. Plaintiff was placed in a brace with steel rods down the side of her leg. She was told not to put any weight on her leg for 30 days. Because of the surgery, she missed a semester at Bucks County Community College. She was on crutches for six to eight weeks. Plaintiff has scars on her knee as a result of the surgery. N.T., 3/8/99, pp. 26-28.

Dr. Evelyn Witkin M.D. has treated plaintiff from June of 1995 to the present. Dr. Witkin stated that an examination of plaintiff's knee showed that she had atrophy in her left quadriceps, fluid above the kneecap, and a kneecap that would shift easily, all of which were indications of a pathology of the knee. Deposition of Dr. Evelyn Witkin M.D., pp. 10-12. Dr. Witkin said that plaintiff complained of weather-related pain, a weak sensation in the knee, the knee would buckle unexpectedly, difficulty

in walking distances, inability to run, and problems with stairs. Deposition at 10-13.

Dr. Witkin further stated that plaintiff's injuries include a disarrangement of the interior structures of the kneecap, tears of the meniscus and inflammation of the ligaments connected to the kneecap, all of which required surgery to repair. Deposition at 15-20. As a result of the trauma to the kneecap from her fall, plaintiff has developed degenerative arthritis and her quadriceps remain atrophied. Deposition at 22-23.

Dr. Witkin testified that plaintiff's condition and problems have improved only slightly between the August 1995 surgery and the date of the time of trial. Dr. Witkin stated that plaintiff still feels as though her left leg will give way or buckle and continues to have difficulty with steps, walking and sitting for any length of time. Deposition at 22-23. Dr. Witkin said plaintiff continues to be treated with pain relievers and other medication. Ever since her surgery, plaintiff requires cortisone injections in her left kneecap. A knee brace is always worn to prevent her knee from buckling. Plaintiff also undergoes physical therapy. Deposition at 23-24.

Dr. Witkin testified that plaintiff's knee problems will not improve. Deposition at 26. She said plaintiff continues to suffer from pain and will continue to do so in the future. Deposition at 27-28. Dr. Witkin said she contemplates treating plaintiff in the future with hyalgen injections, which have to be performed five times a year. Deposition at 24-25. Additionally, more surgical procedures in the future remain a possibility. Deposition at 28.

As a result of the accident, plaintiff's lifestyle has changed. Plaintiff testified that she has problems walking distances and walking up an incline. She is in pain when

she stands or sits for a long period of time. She has difficulty riding in a car for any length of time. N.T., 3/8/99, pp. 32-33. In addition, she is limited in the activities she can perform with her children. Plaintiff cannot ice skate or roller skate with her daughter, or participate in her karate classes as she did before the accident. N.T., 3/8/99, pp. 33-34.

Plaintiff's mother, Janet Garrison, testified that as a result of her fall, plaintiff cannot go shopping or stand up for any length of time. Ms. Garrison testified that plaintiff's leg "gets all purplishy and it is swollen and she is crying and complaining about how much it hurts" when it rains in the winter. She also said that plaintiff is unable to do normal activities with her children. N.T., 3/8/99, p. 51.

The above facts demonstrate that the jury's verdict was not excessive. Plaintiff incurred a serious, debilitating and permanent physical injury that required surgery. Plaintiff has not fully recovered from the injury. She has scars on her knee as a result of the surgery. She is required to undergo cortisone injections into her kneecap. She is required to wear a TENS unit and a knee brace. N.T., 3/8/99, pp. 28-29. She cannot walk or sit for long periods of time. She cannot interact with her children the same way she did before the accident. She has experienced five years of pain and the prognosis is that she will continue to experience pain.

The size of the verdict was not the result of an award for future medical expenses or sympathy for plaintiff. It is improper to "presume that the jurors disregarded their duty and the instructions of the court." *Commonwealth v. Stoltzfus,* 462 Pa. 43, 55, 337 A.2d 873, 879 (1975). The law presumes that the jury followed the court's in-

structions. *Commonwealth v. Jones,* 542 Pa. 464, 490, 668 A.2d 491, 504 (1995). The facts are sufficient to support the presumption. Taking into consideration the pain and suffering plaintiff has experienced since the accident due to her permanent injury, the verdict in this case "falls within the uncertain limits of fair and reasonable compensation. . . ." *Doe v. Raezer,* 444 Pa. Super. at 340, 664 A.2d at 105.

It is for the above reasons that the order of June 22, 1999 was entered.