557 A.2d 743

**Christina LEONARD, a Minor, by Her Mother, and Natural Guardian, Sonja Leonard MEYERS, and Sonja Leonard Meyers, in Her own Right, Appellants,**

v.

**NICHOLS HOMESHIELD, INC. and Paul Newcomer and Suzanne Newcomer and Lewis Brothers Construction Co., Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 29, 1988.

Filed April 13, 1989.

Reargument Denied June 26, 1989.

Marshall A. Bernstein, Philadelphia, for appellants.

Michael E. McGilvery, Philadelphia, for Nichols, appellee.

3

Richard A. Kraemer, Philadelphia, for Newcomer, appellees.

Albert L. Bricklin, Philadelphia, for Lewis Brothers, appellee.

Before McEWEN, MONTEMURO and KELLY, JJ.

KELLY, Judge:

Appellants, Christina Leonard, a minor by her mother and natural guardian, Sonja Leonard Meyers, and Sonja Leonard Meyers, in her own right, appeal the judgment entered in favor of Nichols Homeshield, Inc.[1] For the reasons which follow we reverse and remand for a new trial.

On May 19, 1980, Mrs. Meyers and her two year old daughter Christina arrived home at approximately 5:00 p.m. Shortly thereafter, Mrs. Alice Lindsey, Mrs. Meyers' sister, and her five year old daughter Erica entered the apartment. Soon after their arrival, Erica and Christina began playing together by a window in the living room. Mrs. Meyers and Mrs. Lindsey were engaged in conversation when Mrs. Meyers glanced over at the children and noticed Christina sitting on the window sill. Mrs. Meyers instructed Christina to move away from the window and then turned her head towards Mrs. Lindsey to respond to a question. Within seconds, Mrs. Meyers returned her attention to the children and discovered that Christina was no longer seated on the windowsill and the screen was missing. Christina was found lying unconscious on the pavement outside the apartment building.

On December 22, 1981, Mrs. Meyers instituted this product liability action against appellee, the manufacturer and seller of an alleged defective window screen. Appellants' claims were based upon strict liability under Section 402A of the Restatement Second of Torts and upon appellee's negligence. Appellee joined as additional defendants Paul

1. On May 29, 1988, appellants filed with the Prothonotary a copy of the entry of judgment. Therefore, we treat the notice of appeal previously filed in this case as filed after the entry of judgement. Pa.R.A.P. 905(a).

and Suzanne Newcomer, appellants' landlord, and Lewis Brothers Construction Company, the installer of the window screen assembly involved in the accident. Appellee alleged that the additional defendants were negligent in designing, installing, and constructing the window and creating and maintaining a hazardous condition.[2]

The matter was tried from January 6, 1986 through January 17, 1986. The case was submitted to the jury by means of a series of interrogatories, whereby the jury found the screen was not defective and appellee was not negligent. Post-trial motions were filed, argued, and denied. This timely appeal followed.

On appeal, appellants raise the following issues for our review:

 I. Whether the trial judge erred in denying plaintiff's motion in Limine to preclude Nichols' expert, Charles Dietrich from testifying when Nichols had failed to answer expert interrogatories or file pre-trial memoranda and did not supply any expert report until long after plaintiffs' expert had testified by way of videotape deposition, and after the trial had actually commenced and further in denying a Motion for a continuance based on these facts.

 II. Whether the trial judge abused his discretion in permitting the jury to be shown videotaped testing involving a screen and in allowing testimony based on that experiment when the conditions of that testing were substantially dissimilar to those present on the day of the accident.

 III. Whether the verdict was clearly against the weight of the evidence and perhaps indicative of improper

---

2. At the close of all the evidence, additional defendants, without opposition by any party, moved for and were granted a compulsory non-suit. Under the circumstances, appellants have not preserved a basis for challenging the propriety of the granting of the motion for non-suit. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). *See also Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986) (Superior Court erred in *sua sponte* reversing a directed verdict in favor of defendant when none of the parties challenged his dismissal on appeal).

influence in that the admissions of the defendant and its officers and the overwhelming quantum of credible evidence demonstrated defendant's liability. Appellants' Brief at 3. Upon review of the record, the briefs, and the applicable authority, we find that appellants' second issue has merit.

Appellants contend that the trial court committed reversible error when it permitted appellee's expert, Mr. Charles Dietrich, to testify as to certain tests he conducted and to show a videotape of that testing. Appellants assert that the circumstances under which the demonstration was conducted were not similar to those involved in the accident. Therefore, appellants argue that the videotape tests were misleading and highly prejudicial, and it was reversible error for the trial court to allow its admittance into evidence. We agree.

Questions of admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 467 A.2d 615 (1983). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. Though "relevance" has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *See Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983).

As a general rule, demonstrative evidence is admissible if its probative value outweighs the likelihood of improperly influencing the jury. L. Packel and A. Poulin, *Pennsylvania Evidence*, § 416.1 at 226 (1987); *Jackson v. Spagnola*, 349 Pa.Super. 471, 503 A.2d 944 (1986). As noted in *House of Pasta, Inc. v. Mayo*, 303 Pa.Super. 298, 449 A.2d 697 (1982); " '[P]rejudice' does not mean 'detri-

mental to a party's case' but rather 'an undue tendency to suggest a decision on an improper basis.'" *Id.*, 303 Pa.Superior Ct. at 313 n. 6, 449 A.2d at 704 n. 6. *See also Jackson v. Spagnola, supra.* The problem presented by the use of experiments, however, is the danger of misleading the members of the jury who may attach exaggerated significance to the test results. *See generally,* McCormick on Evidence § 202 (3rd Ed.1984). As a result the courts have required that the conditions be sufficiently close to those involved in the accident at issue to make the probative value of the demonstration outweigh its prejudicial effect. *See Commonwealth v. Sero,* 478 Pa. 440, 387 A.2d 63 (1978). *See also Gladhill v. Generals Motors Corp.* 743 F.2d 1049 (4th Cir.1984); *Barnes v. General Motors Corp.* 547 F.2d 275 (5th Cir.1977); *Ramseyer v. General Motors Corp.* 417 F.2d 859 (8th Cir.1969); *Hopkins v. E. I. Du Pont De Nemours & Co.,* 199 F.2d 930 (3rd Cir.1952). This is especially important where the demonstration is a physical representation of the event. Thus, the general rule regarding corroboration by experiments is that unless some other exclusionary rule is violated, the demonstration may be admitted into evidence when the circumstances under which the experiment was performed were sufficiently similar to the event in question to throw light on a material point in controversy and to assist the jury in arriving at the truth rather than to confuse the jury or prejudice the other party. *See* L. Packel and A. Poulin, *Pennsylvania Evidence,* § 709 at 538 (1987). *Cf. Commonwealth v. Davis,* 381 Pa.Super. 483, 554 A.2d 104 (1989).

Appellants argue that the prejudicial effect of the tests outweighed its probative value because the testing was done under conditions so dissimilar to the accident as to make the results and the demonstrations valueless. We agree.

In the instant case, Christina Leonard was seriously injured when she fell out of a second story window. The window opening was eleven inches from the floor with a deep sill. It contained a tall screen which had been manu-

factured in 1977 and had been placed in the window sometime in 1979. The screen was held in place by inserting the top bar of the screen into a channel at the top of the window and then latching it at the bottom. The latching mechanism consisted of two metal tongues, one on each of the left and right sides of the screen, which tongues were intended to fit into corresponding slots in the window frame.

At trial, appellants' theory of liability against appellee was that the screen fit improperly into the frame and allowed accidental unlatching. To support their theory of liability appellants called to testify Dr. Maurice Brull, a Professor of Engineering and Mechanics at the University of Pennsylvania. Dr. Brull's field of expertise was structural mechanics. Dr. Brull testified that the screen and latching mechanism did not conform to an accepted standard of engineering design and that the accident was directly related to the design defects. (N.T. 1/9/86 at 527). In Dr. Brull's opinion the latching device as designed could be opened inadvertently by a single action of such force that a child could operate it, and the length of the insertion of the tongue was improper, such that under the typical force of a child leaning against the screen, the latch would disengage and the screen would open. Dr. Brull further stated that the locking device did not have enough penetration to avoid its popping out or disengaging. (N.T. 1/9/86 at 526, 527).[3] Finally, Dr. Brull stated that in his opinion if the screen was not designed to guard against someone coming in contact with it, resulting in its popping out, the manufacturer should have provided a warning which indicated that the screen was not a structural item and should not be used in a window that opened below waist level. (N.T. 1/9/86 at 559).

3. The window opening was thirty-two inches wide and fifty-four inches high and the Nichols screen measured thirty-one and seven eighth inches by fifty-four and seven eighth inches. Dr. Brull believed that the latching mechanism would not fully and securely latch because of the eighth of an inch difference between the width of the window and the width of the Nichols' screen. (N.T. 1/9/86 at 518).

Appellee's defense was that the screen, as designed, was safe for its intended use. In support of its defense, appellee called Mr. Charles Dietrich, an engineering consultant, to testify on its behalf. During the course of his investigation, Mr. Dietrich had a model of the window constructed which was based upon his measurements of the *window* in Mrs. Meyers' former apartment.[4] A Nichols perma-clean insect screen which was designed to fit an Anderson narroline double-hung window was placed inside the model of the window. The screen was ordered from Nichols by Mr. Dietrich some time in the latter part of 1985. Using this model, Mr. Dietrich conducted two experiments the results of which formed the basis for his opinion.

The first experiment was known as a push-out test which consisted of pushing on the screen using a calibrated force gauge which measured the amount of force needed to pop the screen out of the window.[5] (N.T. 1/15/86 at 1084). The second experiment involved the use of an anthropomorphic dummy which was a replica of a three year old child in the fifty percentile. Mr. Dietrich placed the dummy on the duplicate window sill with its back towards the screen and then he let the dummy fall backwards into the screen. The purpose of this experiment was to demonstrate that the screen, if latched, would remain in place. Both of these experiments were videotaped and admitted into evidence over appellants' objection.

Appellants' objected to the admission of these experiments because they were essentially a re-enactment of the accident but were under such conditions so dissimilar to the accident as to make the results and the demonstrations valueless. Specifically, appellants asserted that the follow-

4. Although appellee had intended to introduce the model into evidence, it not admitted because it was lost during the shipment from Massachusetts to Philadelphia. As a result the Court, opposing counsel, and the jury were unable to view the actual model used in conducting the experiments.

5. In connection with the push-out test, Mr. Dietrich also tested children ages two through four to determine the amount of force those children could exert. This particular experiment was necessary to explain the significance of the results from the push-out test.

ing dissimilarities demonstrated that the results were misleading and irrelevant:

1. Dietrich used a dissimilar, newer, modified and improved screen # 2846, not the one nor even the type involved in the accident (RR 696–697a, 751–752a).

2. The window frame employed in the experiment had a *different and improved latching receptacle* (RR 751–752a, 789–790a). This is most significant since one of the allegations of defect was the design of the latching mechanism.

3. The force applied during the Dietrich testing was at a different location than occurred in the accident. He tested the screen at the center uppermost portion of the lower half of the window screen, directly below the fully raised sash (RR 739a). Admittedly the screen would withstand varying pressure depending on where it was applied.

4. In the test, both of the latches were *fully* engaged (RR 790a). It is unknown whether this was the actual fact at the time of the accident, but one of the key issues in dispute at the trial was the ability of the screen latch to become partially disengaged by accident or inadvertence.

(Appellants' Brief at 32).

 The purpose of the experiments was to demonstrate how much force was necessary to disengage the latched screen from the window in addition to determining whether the screen would pop out if a three year old child accidently fell back on it. Thus, the experiments constituted a re-enactment of the accident rather than a demonstration used to illustrate the general operation of the screen.[6]

---

6. Both the trial court and appellee rely upon this Court's decision in *Jackson v. Spagnola, supra,* to support their position. We find such reliance misplaced because the demonstration in *Spagnola* involved general principles of physics universal in its application. In the instant case, however, the experiments were a re-enactment of the accident. Experiments showing general properties of materials are admitted without confining the experiments to conditions surrounding the litigated situation. McCormick *supra,* § 202 at 603 n. 25 and

The demonstration, however, involved a newly purchased screen which may or may not have included a latching mechanism similar in design to the latching mechanism attached to the screen in Mrs. Meyers' apartment. As a result, the experiments did not logically or reasonably prove or disprove whether the screen involved in the accident would have performed in a similar manner. In other words, the results of the experiments were not probative. Thus, the experiments were not a fair comparison in respect to any contested issue in the case. The ultimate effect, however, was that the jury viewed a videotape which illustrated that if the latching mechanism was properly in place and the child leaned or fell into the screen, the screen remained secure. It is easy to understand why the jury may have been unable to visualize appellants' version of the incident after viewing the videotape. Indeed, the conditions were dissimilar in such fundamental and important respects as to make the results largely irrelevant, if not misleading. Thus, we conclude that it was error to admit the results of the test. We also conclude that the risks of prejudice to appellants outweighed the probative value of the evidence and the admission constituted reversible error. Accordingly, we reverse and remand for a new trial.[7]

Judgment reversed and the matter is remanded for a new trial. Jurisdiction is relinquished.

26. Furthermore, in *Spagnola* the test was undertaken solely to obtain greater scientific knowledge of general principles of physics as opposed to an experiment commissioned for a specific law suit. The former has the added advantage of being untainted by an interest in the litigation. The process of exposing one's work to the scrutiny of the scientific community through publication acts as an important check. McCormick *supra*, § 202 at 604. *See also Harkins v. Ford Motor Co.* 437 F.2d 276 (3rd Cir.1970).

7. Because we are directing that a new trial should be given to appellants, there is no need to pass on appellants' remaining two issues.