**Langille v. The Genie Company**

278

C.P. of Northampton County, no. C0048CV2002 006849, C0048CV20035906.

*Martin D. Cohen,* for plaintiff.
*Joseph P. Connor III,* for defendant Assembly Plus.
*Kenneth M. Dubrow,* for defendant Home Depot Inc.

BARATTA, *J.,* April 25, 2005—

## STATEMENT OF REASONS

Plaintiff has couched this motion in limine as a *"Frye"* objection as it relates to the videotape re-creation prepared by John Scates P.E.

This matter is a personal injury claim where the plaintiff alleges that he was injured when a bracket anchoring a high tension torsion spring of a garage door opener disengaged from a wall. Allegedly, after the bracket broke free from the wall, the torsion spring and the bracket spun wildly out of control, thereby striking plaintiff's hand, causing serious injuries.

Mr. Scates has been proffered by defendants as a leading expert in the field of torsion spring mechanics and has created a videotape reenactment of the incident. Mr. Scates' videotape attempts to re-create the release of a wall bracket that is securing the torsion spring, in order to demonstrate the mechanics of the torsion spring unwinding with the bracket attached to the spring as it is released from the wall.

Although Mr. Scates is proffered as an expert, and has allegedly re-created the event leading to the plaintiff's injury, we note that the re-creation is not "exact" in that plaintiff's garage door had a double torsion spring (by that we mean that there were two torsion springs on each side of the bracket). Whereas, Mr. Scates' demonstration used a garage door opener with a single torsion spring attached to the right side of the bracket.

Plaintiff has noted the difference between the torsion spring used by Mr. Scates and the torsion spring which allegedly injured plaintiff and now argues that the Scates' videotape should be precluded as novel scientific evidence, a violation of the *"Frye"* rule.

The *"Frye"* rule was set forth in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), and prescribes that scientific evidence will not be permitted until it has achieved "general acceptance" in the scientific community.

Pennsylvania has adopted the *Frye* standard as Rule 702 of our rules of evidence. Pa.R.E. 702 provides:

"If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

In *Blum v. Merrell Dow Pharmaceuticals Inc.,* 564 Pa. 2, 764 A.2d 1 (2000), our Supreme Court explained that *Frye* requires that the methodology employed by the testifying scientific expert be generally accepted by the relevant scientific community.[1] Clearly, a *Frye* objection to

---

1. We note that the *Blum* case also discussed *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993), and, within *Blum,* the majority of our Supreme Court suggested that the *Daubert* standard also be applied. *Daubert* expands the inquiry regarding the admissibility of expert scientific testimony to include: "(1) whether the theory or technique in question can be (or has been) tested, (2) whether it has been subjected to peer review and publication, (3) its known or potential error rate and the existence and maintenance of standards controlling its operation and (4) whether it has attracted widespread acceptance within a relevant scientific community." *Daubert,* 509 U.S. at 580.

the admissibility of scientific evidence does not require that the "relevant scientific community" generally accept the conclusion of the expert witness. Instead, "the party seeking exclusion of the witness' testimony must demonstrate that the methodology used to reach the expert witness' conclusion was not generally accepted by the relevant scientific community." *Cummins v. Rosa,* 846 A.2d 148, 151 (Pa. Super. 2005).

Generally, the specter of a *Frye* objection suggests that the court will be involved in evaluation and review of very technical issues to determine the scientific reliability.

However, in this case, the videotape itself is a mere re-creation of what occurred when the bracket holding a garage door torsion spring disengages from the wall. We believe that the video serves only as demonstrative evidence to illustrate Mr. Scates' expert testimony.

Demonstrations or re-creations are permissible for illustrative or explanatory purposes. The law in Pennsylvania is that, in order for a demonstration to be admissible, the circumstances and conditions of the demonstration must be substantially similar to those that existed during the event or transaction at issue, unless a demonstration is offered to demonstrate a general principle. See *Harsh v. Petroll,* 840 A.2d 404 (Pa. Commw. 2003); *Leonard by Meyers v. Nichols Homeshield Inc.,* 384 Pa. Super. 1, 557 A.2d 743 (1989).

In *Commonwealth v. Smith,* 808 A.2d 215 (Pa. Super. 2002), a videotape was created by the Commonwealth to refute the defendant's assertion that the accident was caused by a mechanical failure of her vehicle when the ball joint became dislodged. The Commonwealth pre-

sented an expert who re-created a scene where a ball joint identical to that on the appellant's vehicle became dislodged. The video explained what a ball joint looked like and what would occur when it is dislodged. In *Smith,* the Superior Court held that the "[t]est results of experiments are admissible if conditions under which the experiment was conducted are 'substantially similar' to conditions involved [in the event]." *Id.* at 232.

We note that this matter has been a major case assignment for this court; therefore, we have been involved in nearly all phases of this litigation. Although we have read descriptions of the accident and heard counsel argue about this event, we were unable to visualize the mechanics of the injury-causing event. At a summary jury trial in this matter, we had our first opportunity to view Mr. Scates' reenactment. We found the videotape to be helpful and illustrative regarding learning the mechanics of what occurs when a bracket holding a high tension torsion spring to a garage door opener disengages from a wall.

However, we are also concerned about the dissimilar conditions involved in Mr. Scates' reenactment in that his videotape reenactment had a single torsion spring, whereas the plaintiff's garage door opener had a double torsion spring. Mr. Scates' report and his videotape do not address this dissimilarity.

Clearly, common sense would suggest that a double torsion spring may create more force and speed when disengaged from its wall bracket when compared to a single torsion spring. However, the general mechanics or movement of a garage door torsion spring, once its bracket disengages from the wall, is depicted by the videotape. There has been no offer by plaintiff (by expert

report or other factual assertion) to suggest that the re-creation was not substantially similar to the event injuring the plaintiff. Therefore, we find that the re-creation will be illustrative, probative and helpful to the jury in understanding the mechanics of the injury. We feel comfortable that we will be able to successfully craft a cautionary instruction that will explain to the jury that the videotape re-creation was not exact, and, therefore, the tape should only be considered to understand the general mechanics or movement of a garage door torsion spring once its bracket disengages from a wall.

The second portion of the videotape where Mr. Scates asserts that the "play" or "give" in the rod holding the torsion spring is limited and attempts to demonstrate that for the jury by pulling on the rod with his hand is excludable. Certainly, that demonstration is not a re-creation of the movement of the rod once the coiled and powerful torsion spring begins spinning wildly because the bracket disengages from the wall. Further, the amount of "play" or "give" generated by Mr. Scates' pulling on the rod is certainly limited to whatever effort or force Mr. Scates can or chooses to apply to the bar. That demonstration is certainly not scientific, nor is it a re-creation of the event itself, and finally is incapable of being measured in any scientific or exact quantification. Therefore, we find that his subjective presentation is not appropriate for demonstration to the jury.

## ORDER

And now, April 25, 2005, plaintiff's motion in limine to preclude the videotape re-creation produced by John Scates P.E. is granted in part and denied in part.

284

We grant plaintiff's motion in limine only as it relates to the end portion of the videotape. We will deny plaintiff's motion and permit the jury to view that portion of the videotape that includes Mr. Scates' explanation of the re-creation and the release of the bracket holding the torsion spring to the wall, causing the spring to unwind. However, we will preclude the jury from seeing that portion of the videotape where Mr. Scates pulls down on the torsion spring bar in an attempt to demonstrate the amount of play or give in the rod holding the torsion spring.