J-A06017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JILL MILANO & KEITH MILANO, H/W, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| COMMERCE SQUARE PARTNERS, PHILADELPHIA PLAZA, L.P. AND THOMAS PROPERTIES GROUP, P.C. | |
| Appellees | |
| ------------------------------------------------ | |
| JILL MILANO & KEITH MILANO, H/W, | |
| Appellants | |
| v. | |
| AMERICAN BUILDING MAINTENANCE, INC., | |
| Appellee | No. 897 EDA 2016 |

Appeal from the Judgment Entered February 22, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 131002576, 140200258

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JULY 18, 2017**

Jill Milano and Keith Milano, husband and wife (collectively "Appellants"), appeal from the judgment entered on February 22, 2016, following a jury verdict in favor of Commerce Square Partners, Philadelphia Plaza, L.P., Thomas Properties Group, P.C., and American Building Maintenance, Inc. (collectively "Appellees").  We affirm.

The relevant facts and procedural history in this matter were set forth by the trial court in its opinion as follows:

[Appellants] brought the instant premises liability action due to a slip and fall incident involving Jill Milano that occurred on January 2, 2013, in the hallway on the 26th floor of One Commerce Square (a property owned by [Appellee] Commerce Square Partners) in the vicinity of the mailroom for the law firm of Stradley Ronan. Stradley Ronon employed Jill Milano as a secretary, at the time of the alleged incident. [Appellant], Jill Milano, did not allege in her Complaint that she fell due to any foreign object or substance on the floor. Rather, she alleged that she fell because the vinyl floor was "highly polished," which, she argued, allegedly caused her to slip and sustain left hip injuries, nerve damage and Complex Regional Pain Syndrome, aka Reflex Sympathetic Dystrophy ("RSD"). Jill Milano's husband, Keith Milano, made a loss of consortium claim.

The hallway at issue was maintained and cleaned pursuant to a lease between Ms. Milano's employer, Stradley Ronan, and [Appellee], Commerce Square Partners. Commerce hired [Appellee], Thomas Properties Group, to manage the property. The actual work of cleaning and maintaining the floor in the hallway near the Stradley Ronan mailroom was performed by [Appellee], American Building Maintenance, a subcontractor, hired by Thomas Properties, which managed the property.

[Appellants] commenced the action against Commerce Square Partners-Philadelphia Plaza, L.P. and Thomas Properties Group, Inc. on October 25, 2013.

On December 11, 2013, [Appellees] Thomas Properties and Commerce Square filed a Joinder Complaint against American Building Maintenance, Inc. on the grounds of contractual indemnification, contribution, and indemnification.

The two cases were consolidated by Order of the Honorable Mark Bernstein on September 2, 2014.

The matter was tried before the Honorable Esther Sylvester in October, 2015, and concluded on October 30, 2015, with a jury verdict finding that [no Appellees] were negligent

- 2 -

with respect to the alleged fall; thus in favor of all [Appellees] against all [Appellants].

[Appellants] filed timely Post-Trial Motions for New Trial, or Judgment Notwithstanding the Verdict, which were denied by the Trial Court on February [22], 2016.[1]

Subsequently, [Appellants] filed an Appeal with the Superior Court on March 16, 2016, and a Statement of Matters Complained of on Appeal on April 7, 2016.

Trial Court Opinion, 7/19/16, at 1-3.[2]

On appeal, Appellants raise the following issues for this Court's

consideration:

1. Whether the trial court erred in entering Orders *in limine* on October 8 and 13, 2015 precluding [Appellants] from introducing an email and testimony about actions described in the Email?

2. Whether the trial court excluded evidence as subsequent remedial measures that was admissible for purposes allowed under the rules of evidence?

3. Whether the trial court erred in precluding [Appellants'] expert, Dr. William Marletta, from testifying about the condition of the floor where the fall occurred that changed from the time of the injury?

4. Whether the trial court erred in allowing [Appellees'] expert from [sic] testifying about tests performed on the floor while

_____

[1] The February 22, 2016 order also directed that judgment was entered in favor of Appellees.

[2] There were two trial court opinions filed in this matter. The pre-trial rulings were decided by the Honorable Karen Shreeves-Johns, and Judge Shreeves-Johns was the author of the Pa.R.A.P. 1925(a) opinion, dated August 16, 2016. The Honorable Esther R. Sylvester presided at trial, and Judge Sylvester drafted the July 19, 2016 trial court opinion.

excluding evidence about material differences in the condition of the floor when those tests were taken?

5. Whether the trial court erred in allowing [Appellees'] expert to testify about "normal business practices"?

6. Whether the trial judge had the authority to reverse the decision of another judge in the trial court under these circumstances?

7. Whether the trial court erred in refusing to charge the jury to the effect that [Appellants] did not need to prove notice of a dangerous condition to hold the possessor liable from resulting harm?

8. Whether the verdict was against the weight of the evidence?

Appellants' Brief at 7-8.

Appellants' first two issues concern the admissibility of evidence and request for a new trial. We address these issues together and begin by setting forth our standard of review:

Appellate review of the denial of a post-trial motion for a new trial is guided by the following principles:

The Superior Court's standard for reviewing the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case. We will reverse the trial court's denial of a new trial only where there is a clear abuse of discretion or an error of law which controlled the outcome of the case. The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. Abuse of discretion may occur through an honest, but erroneous use of discretion. A new trial may not be granted merely because the evidence conflicts and the jury could have decided for either party. The grant of a new trial is

appropriate, however, where the jury verdict may have been based on improperly admitted evidence.

* * *

Questions regarding the admissibility or exclusion of evidence are also subject to the abuse of discretion standard of review. Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally, for the purposes of this evidentiary rule, prejudice means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

*Rohe v. Vinson*, 158 A.3d 88, 95 (Pa. Super. 2016) (quoting *Whyte v. Robinson*, 617 A.2d 380, 382-383 (Pa. Super. 1992) (internal quotation marks and emphasis omitted)).

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014), *appeal denied*, ___ A.3d ___, 2015 WL 3500130, 46 EAL 2015 (Pa. filed May 27, 2015), *cert. denied* 136 S.Ct. 557 (filed November 30, 2015).

A trial court's decision to grant a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." ***Id***.

Appellants allege that the trial court erred in entering orders on October 8, 2015, and October 13, 2015,[3] precluding Appellants from introducing an email sent from Stradley Ronon Director of Operations, Janet Roedell, to American Building Maintenance, Inc. Manager, Robert DiSalvatore, on January 10, 2013 ("the email"), and testimony about items described in the email. We disagree.

The text of the email is as follows:

> Bob:
>
> Wanted to make you aware that we had an employee slip and fall last week in the corridor on the 26[th] floor outside of the freight elevator area (this area is enclosed on either end by two doors and is where our Mail/Copy Centers are located).
>
> Apparently, the employee slipped and fell, several other employees commented on the fact that this particular floor is always more slippery than other tile floors. I am wondering if the floor wax/buffing is more pronounced [on] this area because it's where most of our deliveries come in (because of the adjacency to our Mail Room) and it takes a beating.

_____

[3] The February 22, 2016 order disposed of all claims and all parties, and it made final all previously filed interlocutory orders. ***See Betz v. Pneumo Abex LLC***, 44 A.3d 27, 54 (Pa. 2012) (holding that "an appeal of a final order subsumes challenges to previous interlocutory decisions"); Pa.R.A.P. 341 note ("A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order[.]").

Can you check this out and if there is a coating of wax or other slippery substance, have it stripped off and we'll live with the fact that this floor is not as shiny as others. Besides, it's behind the scenes so our clients and visitors don't see it.

Thanks very much,

Janet.

Pa.R.A.P. 1925(a) Opinion, 8/16/16, at 4 (quoting Appellee American Building Maintenance, Inc.'s 9/24/15 motion *in limine*, Exhibit 1).

The trial court concluded that the email was improper evidence of subsequent remedial measures and inadmissible hearsay. Trial Court Opinion, 7/19/16, at 9-10. The Pennsylvania Rules of Evidence provide, in relevant part, as follows:

**Subsequent Remedial Measures**

When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove:

> • negligence;
>
> • culpable conduct;
>
> • a defect in a product or its design; or
>
> • a need for a warning or instruction.

But the court may admit this evidence for another purpose such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407.

Our Supreme Court has stated:

- 7 -

The admission of [evidence of subsequent remedial measures] cannot be defended on principle. It is not more likely to show that there was negligence before the accident than that the occurrence of the accident first suggested the use of methods or appliances not before thought of; it applies to conduct before an accident a standard of duty determined by after-acquired knowledge; it punishes a prudent and well-meaning defendant who guards against the recurrence of an accident he had no reason to anticipate, or who out of a considerate regard for the safety of others exercises a higher degree of care than the law requires.

*Duchess v. Langston Corp.*, 769 A.2d 1131, 1137 n.7 (Pa. 2001) (citation omitted); *see also Columbia & Puget Sound RRCo. v. Hawthorne*, 144 U.S. 202, 207-208 (1892) (describing evidence of remedial measures as incompetent in that the taking of such precautions against the future is "not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and create a prejudice against the defendant.").

Appellants cite *Carney v. Otis Elevator Co.*, 536 A.2d 804 (Pa. Super. 1988), as support for their contention that the email was admissible despite it being illustrative of subsequent remedial measures. Appellants' Brief at 20. In *Carney*, this Court found that evidence of subsequent remedial measures was properly admitted for impeachment purposes after a maintenance worker testified that the doors of an elevator at issue were in good working order on June 4, 1982. *Id*. at 807-808. Evidence of subsequent remedial measures was permitted in the form of a document

that revealed that the elevator was inspected on May 13, 1982, and the elevator's door was replaced on June 4, 1982.

In the case at bar, Mr. DiSalvatore, the witness whose testimony Appellants argue they sought to impeach with the email, did not testify that the floor was slippery **before** stripping the wax from the floor, nor did he testify that the floor was not slippery **after** the floor was stripped. In fact, no witness testified that the floor was slippery. Thus, unlike in **Carney**, there were no proven facts to impeach; Appellants were merely attempting to admit inadmissible hearsay into evidence. We conclude that there was no error in the trial court's ruling.

Additionally, Appellants baldly claim that the trial court erred in its ruling, usurped the purview of the jury, and distorted the record. Appellants' Brief at 17-18. This conclusory argument fails as it does not illustrate how the trial court erred or in what way it abused its discretion. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [an appellant's] claim." **Irwin Union Nat. Bank & Trust Co. v. Famous**, 4 A.3d 1099, 1103 (Pa. Super. 2010).

Appellants also argue that the email was a business record and admissible as an exception to the prohibition on hearsay pursuant to Pa.R.E. 803 and 803.1. Appellants' Brief at 19. We disagree.

**Exceptions to the Rule Against Hearsay--Testimony of Declarant Necessary**

- 9 -

The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:

* * *

**(3) Recorded Recollection of Declarant-Witness.** A memorandum or record made or adopted by a declarant-witness that:

(A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;

(B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and

(C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.

If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1(3).

Furthermore, the Pennsylvania Rules of Evidence provide:

**Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * *

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Under the facts presented here, the trial court concluded that the exceptions do not apply:

The email was not composed "in the regular course of business." … The Superior Court has defined "in the regular course of business" as follows: "In the regular course of business" includes entries made systematically and as part of a regular routine which requires the recording of events or occurrences, the reflection of transactions with others. These essentially must be established by testimony of the custodian or of another qualified witness." Ganster v. Western Pennsylvania Water Co., 349 Pa. Super. 561, 504 A.2d 186, 190 (1985). Here, the email does not reflect a transaction with others, it was not made at or near the time of the accident, it was not made due to a requirement of recording events or occurrences and it was not made systematically.

Pa.R.A.P. 1925(a) Opinion, 8/16/16, at 6.

We agree with the trial court. The email fails to satisfy the requirements of Pa.R.E. 803.1(3) in that it was not the drafter, Janet Roedell's, recollection, and there was no indication that the email was written when the events of January 2, 2013, were fresh in her mind because

- 11 -

it was drafted more than one week after the accident. Moreover, under Pa.R.E. 803(6)(E), the email lacks trustworthiness, as it was not written based on the drafter's recollection of events, but on additional hearsay insofar as it was written citing to "several other employees['] comment[s]." As noted, the admissibility of evidence is left to the discretion of the trial court. *Rohe*, 158 A.3d at 95. Based on the facts of this case, we discern no abuse of that discretion. Thus, Appellants' claim that the records of a regularly conducted activity exception or recorded recollection exception to the prohibition on hearsay fail.

We discern no error or abuse of discretion in the evidentiary rulings.[4] Accordingly, Appellants are entitled to no relief on their first two issues.

In their third issue, Appellants aver that the trial court erred in precluding their expert, Dr. William Marletta, from testifying about the condition of the floor and how it had changed from the time of the accident. We conclude that this claim is meritless.

_____

[4] We are constrained to note that throughout Appellants' brief, Appellants repeatedly seek to admit evidence contained in this email. Specifically, they seek the admission of evidence that the floor was stripped following the accident. As discussed, the trial court precluded evidence that the floor was stripped as impermissible evidence of subsequent remedial measures. However, the notes of testimony reveal that Appellants' trial counsel repeatedly blurted out and mentioned the fact that the floor was stripped during his questioning of witnesses. N.T., 10/23/15, at 123. Thus, while it cannot be deemed evidence, the stripping of the floor was placed before the jury, over objections, through counsel's questioning despite the trial court's ruling.

Appellants begin by asserting that Dr. Marletta's testimony was permissible pursuant to Pa.R.E. 703. Pa.R.E. 703 provides as follows:

**Bases of an Expert's Opinion Testimony**

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

However, Appellants then assert that Dr. Marletta should have been permitted to testify as to the change in condition based on the assertion contained in the aforementioned email that other people had claimed the floor was "always more slippery" and that "others complained about this particular floor" despite there being no testimony to support those averments. Appellants' Brief at 25-26. Thus, Appellants ignore that in order for an expert to rely on a "fact," evidence of that fact must be admissible. Pa.R.E. 703 Comment (citing Pa.R.E. 104(a)). The facts upon which Appellants allege that their expert would rely were the subsequent remedial measures discussed *supra* and contained within the email discussed above. Moreover, after review, Appellants' argument reveals an attempt to introduce those subsequent remedial measures. For the same reasons we discussed above relative to the email and the testimony of Mr. DiSalvatore, Appellants' expert, Dr. Marletta, was properly precluded from testifying about the change in the condition of the floor after the accident. While

Appellants sought to have Dr. Marletta testify that the floor was stripped after the accident, Appellants' Brief at 25, Appellants provide no basis upon which such testimony would be admissible under Pa.R.E. 407. Appellants' claim is meritless, as it was merely an attempt to introduce properly precluded evidence of subsequent remedial measures contained in the email. No relief is due on this issue.

In the fourth issue on appeal, Appellants assert that the trial court erred in allowing Appellees' expert, Timothy Joganich, to testify about tests performed on the coefficient of friction on the floor while excluding evidence about material differences in the condition of the floor when those tests were taken. We conclude that no relief is due.

At the outset, we note that

> the general rule regarding corroboration by experiments is that unless some other exclusionary rule is violated, the demonstration may be admitted into evidence when the circumstances under which the experiment was performed were sufficiently similar to the event in question to throw light on a material point in controversy and to assist the jury in arriving at the truth rather than to confuse the jury or prejudice the other party.

***Leonard by Meyers v. Nichols Homeshield, Inc.***, 557 A.2d 743, 745, (Pa. Super. 1989).

Mr. Joganich was offered by Appellee, American Building Maintenance, Inc., as an expert in engineering. N.T., 10/27/15, at 61. Mr. Joganich testified that he tested the floor on the same day as Appellants' expert, Dr. Marletta; Mr. Joganich concluded that the floor in question exceeded

standards for walk-way safety and slip-resistance. *Id*. at 64, 72-77. Stated differently, Mr. Joganich concluded that the floor was not slippery.

The thrust of Appellants' argument is that the floor as tested was not in the same condition as it was at the time of the accident. Appellants' Brief at 31. However, the standard described in *Leonard* does not require the circumstances to be the "same;" it requires the circumstances to be "sufficiently similar." *Leonard*, 557 A.2d at 745. Utilizing this standard, the trial court concluded that the conditions of the floor were sufficiently similar for the experiment "to throw light on whether there was a defective condition of the floor—here, whether the floor was overly-slippery." Pa.R.A.P. 1925(a) Opinion, 8/16/16, at 13. The trial court noted also that Appellants had the opportunity to cross-examine Mr. Joganich on his experiment and conclusions. *Id*.

After review, we discern no abuse of discretion in the trial court permitting Appellees to present Mr. Joganich's testimony regarding his experiment. Accordingly, no relief is due.

In the fifth issue, Appellants assert that the trial court erred in allowing Appellees' expert, Todd Reidbord, to testify about normal business practices. Specifically, Appellants argue that Mr. Reidbord had no basis for his testimony regarding how tenants reported issues to landlords. Additionally, Appellants claim that they were precluded from properly cross-examining Mr. Reidbord because they were not permitted to question on the

aforementioned January 10, 2013 email. Appellants' Brief at 31-33. We conclude that Appellants are entitled to no relief on this fifth claim of error.

Initially, we note that we have already addressed the email and its designation as inadmissible evidence of subsequent remedial measures. We need not address it further. Insofar as Appellants claim that Mr. Reidbord had no basis for his expert opinions as to a tenant reporting issues with the building, we disagree.

"The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Nobles v. Staples, Inc.*, 150 A.3d 110, 113 (Pa. Super. 2016).

> Pennsylvania Rule of Evidence 702 permits expert testimony on subjects concerning knowledge beyond that possessed by a layperson. It is the job of the trial court to assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge. *Snizavich v. Rohm & Haas Co.*, 83 A.3d 191, 194 (Pa. Super. 2013) (citations to quoted authorities omitted). We have explained:
>
> > Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer a lay opinion. Testimony does not become scientific knowledge merely because it was proffered by a scientist. Likewise, expert testimony must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data.
>
> *Id*. at 195 (citations to quoted authorities omitted). Accordingly, we have stated the following test to distinguish between admissible expert testimony and inadmissible lay testimony by an expert:

The exercise of scientific expertise requires inclusion of scientific authority and application of the authority to the specific facts at hand. Thus, the minimal threshold that expert testimony must meet to qualify as an expert opinion rather than merely an opinion expressed by an expert, is this: **the proffered expert testimony must point to, rely on or cite some scientific authority—whether facts, empirical studies, or the expert's own research—that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion.** When an expert opinion fails to include such authority, the trial court has no choice but to conclude that the expert opinion reflects nothing more than mere personal belief.

*Id*. at 197.

**Nobles**, 150 A.3d at 114-115 (emphasis added) (internal quotation marks omitted).

The record reflects that Mr. Reidbord based his opinions on facts and testimony, which are specifically contemplated bases for formulating expert opinions. **Nobles**, 150 A.3d at 114 (quoting **Snizavich**, 83 A.3d at 195). Mr. Reidbord stated that he relied upon the deposition testimony of mailroom employee Ron Widmayer, property manager William Criticos, night manager Charles Chaney, Janet Roedell, Robert DiSalvatore, and Appellants. N.T., 10/23/15, at 109, 110, 118, 152, 170, and 177. Mr. Reidbord also listed these depositions on the list of documents that he reviewed in preparation of his expert report. Appellees' Exhibit 3. For Appellants to claim that Mr. Reidbord had no basis for his opinions is specious. As the trial court noted:

- 17 -

[Appellants] challenge Reidbord's statement in his report that "if an unsafe or unacceptable condition exists in a leased office space in a large commercial building, a representative of the tenant will immediately contact the property manager and advise them of such condition." See [Appellants'] Reidbord Motion, ¶4. [Appellants'] objection is that "there is no authority cited as the basis for the opinion in the report." [Appellants'] Memo in Support of Reidbord Motion, p.2.

[Appellees] in response point to numerous portions of depositions that serve as factual support for Reidbord's statement of the practice of the parties and tenants, such as the deposition of Ms. Roedell in which she stated she "contacts someone" when she learns of slippery conditions ([Appellees] cite the deposition transcripts of two other relevant people about the reporting practices). See [Appellees'] Memo in Opposition to [Appellants'] Reidbord Motion, p. 4.

The issue is not whether defense expert Reidbord's statements are true; that is not an issue before the trial court in deciding a Motion in Limine. The issue is whether the expert may testify to his opinion formed on the basis of the content of multiple depositions. [Appellants were] free to cross-examine Reidbord on these points.

Pa.R.A.P. 1925(a) Opinion, 8/16/16, at 10-11. For the reasons set forth above, we discern no error of law or abuse of discretion.

Next, Appellants claim that Judge Sylvester incorrectly concluded that the coordinate jurisdiction rule precluded her from disturbing Judge Shreeves-Johns's pretrial rulings. Appellants are mistaken.

It is well settled that courts of the same jurisdiction cannot overrule each other's decisions in the same case. *Riccio v. American Republic Ins. Co.*, 705 A.2d 422, 425 (Pa. 1997) (citation omitted). The coordinate jurisdiction rule falls within the "law of the case" doctrine and promotes finality in pretrial proceedings and judicial efficiency. *Id*. Only in

exceptional circumstances, such as an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice, may the doctrine be disregarded. ***Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 282 (Pa. Super. 2016).

Appellants have not alleged a change in controlling law, a substantial change in the facts or evidence, or made any argument that the prior holdings were so clearly erroneous it would create a manifest injustice.[5] Rather, they are seeking to re-litigate the motions *in limine*. Permitting a trial judge to reverse another judge's pretrial rulings would, in essence, render the pretrial rulings superfluous. Here, there was no change in circumstance that would have permitted Judge Sylvester to disturb Judge Shreeves-Johns's pretrial rulings, and Judge Sylvester correctly noted this fact. Trial Court Opinion, 7/19/16, at 8. As such, there was no error in the application of the coordinate jurisdiction rule.

In their seventh issue, Appellants assert that the trial court erred in charging the jury. Specifically, Appellants argue that the trial court refused to charge the jury that Appellants did not need to prove notice of a dangerous condition in order to hold Appellees liable. We conclude this issue is meritless.

---

[5] The only error of law Appellants assert with respect to a pretrial ruling is their claim that the email was improperly excluded. Appellants' Brief at 34.

"Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." **Phillips v. Lock**, 86 A.3d 906, 916 (Pa. Super. 2014). A new trial will be awarded only when the jury charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse rather than clarify a material issue. **Id**. at 916-917. The trial judge has wide latitude in her choice of language when charging a jury, provided that the judge fully and adequately conveys the applicable law. **Id**. at 917.

Appellants argue that the email was evidence of constructive notice to Appellees that the floor was slippery.[6] Appellants' Brief at 35. Thus, Appellants claim that they were not required to prove Appellees had notice of the floor's slippery condition and were entitled to the following jury instruction: "If the owner/occupier, or its employees or agents, create a hazardous condition then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm." **Id**. at 36. Because there was no evidence that Appellees created a dangerous condition, Appellants were required to prove Appellees had notice as reflected in the standard jury instruction.

_____

[6] We note that the trial court stated that the email was written more than a week after the accident and was irrelevant to notice. Pa.R.A.P. 1925(a) Opinion, 8/16/16, at 5.

- 20 -

The trial court instructed the jury as follows:

Now, the owners of the property are required to use reasonable care in the maintenance and use of the property and to protect invitees from foreseeable harm. An owner of property is also required to inspect the premises and to discover the dangerous conditions, and the owner of property is liable for harm caused to invitees by a condition on the land if the owner knows or by using reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm and the owner should expect that the invitees will not discover or realize the danger or will fail to protect them against it and the owner fails to use reasonable care to protect the invitees against the danger. Now, the owner of property is liable to invitees for any harm that the owner should have anticipated regardless of whether the danger is known or obvious.

N.T., 10/29/15, at 171-172.[7] In its opinion, the trial court noted:

In addition, the Court's instruction under Pa. S.S.J. 18.40 as the standard jury charge encompassed the issue of notice, a jury question. The plaintiff, on the other hand, wanted to have the court instruct the jury that there was, in fact, notice, which would have improperly, under the circumstances of this trial, made the court the finder of fact.

Trial Court Opinion, 7/19/16, at 11.

After review, we conclude that Appellants' argument is flawed. There was no evidence that Appellees or their agents caused the floor to be slippery or a hazardous condition; thus, the trial court correctly concluded that notice was a question for the jury. We discern no error of law or abuse of discretion in the trial court's jury charge or in its refusal to use Appellants'

_____

[7] We note that this jury charge is nearly identical to Pennsylvania Suggested Standard Jury Instruction ("Pa.SSJI") (Civ.) 18.40.

proposed jury instruction that assumed facts not in evidence and required the trial court to become the fact finder.

In their final claim of error, Appellants aver that the verdict was against the weight of the evidence. In the argument portion of their brief, Appellants claim that "the trial court committed a series of errors that controlled the outcome of the case." Appellants' Brief at 37. The focus of Appellants' argument is on the email and the application of the coordinate jurisdiction rule. *Id*. Appellants assert that the email was admissible for impeachment purposes despite it being evidence of a subsequent remedial measure and that the trial court applied the coordinate jurisdiction rule too rigidly. Again, we are constrained to disagree.

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Phillips*, 86 A.3d at 919 (internal quotation marks and citation omitted).

We have already disposed of these underlying issues. We decline to address them further, except to reiterate that we agree with the trial court's application of Pa.R.E. 407 with respect to the email and subsequent remedial measures and its application of the coordinate jurisdiction rule concerning

the pretrial rulings. Accordingly, we discern no abuse of discretion in the trial court denying Appellants' motion for a new trial based on the weight of the evidence.

For the reasons set forth above, we conclude that Appellants are entitled to no relief in this appeal. Accordingly, we affirm the judgment entered on the jury verdict in favor or Appellees.

Judgment affirmed.

Judge Panella joins this Memorandum.

Judge Ransom concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017